## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**BRACH EICHLER LLC**
Bob Kasolas, Esq.
Mark E. Critchley, Esq.
101 Eisenhower Parkway
Roseland, New Jersey  07068
(973) 228-5700
*Attorneys for Defendant US Dealer Services, Inc.*

| | |
|---|---|
| **NATHAN ROWAN,** individually on behalf of all others similarly situated, **Plaintiff,** v. **US DEALER SERVICES, INC.,** **Defendant** | CIVIL ACTION # 2:21-CV-09945-KM-LDW **CLASS ACTION** Motion Day:    January 3, 2022 |

## <u>US DEALER SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

Dated: December 10, 2021

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................1

II.  RELEVANT UNDISPUTED MATERIAL FACTS.............................4

III. LEGAL STANDARD ......................................................................6

IV.  ARGUMENT..................................................................................8

   A.  Binding FCC Rulings Dictate that Plaintiff's TCPA Claims Fail as a Matter of Law....................................................................................8

   B.  Relevant Precedent as Applied to the Undisputed Facts at Issue Further Show that Plaintiff's TCPA Claims Fail as a Matter of Law..................................13

V.   CONCLUSION ............................................................................17

BE:12245543.1/USD008-280291

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................7

*Big Apple BMW, Inc. v. BMW of North America, Inc.*,
974 F.2d 1358 (3d Cir. 1992) ...............................................................7

*Black Car Assistance Corp. v. New Jersey*,
351 F. Supp. 2d 284 (D.N.J. 2004) ....................................................... 7-8

*CE Design Ltd. v. Prism Business Media, Inc.*, No. 07 C 5838,
2009 U.S. Dist. LEXIS 70712 (N.D. Ill. Aug. 12, 2009) ........................................14

*CE Design Ltd. v. Prism Business Media, Inc.*,
606 F.3d 443 (7th Cir. 2010) ...............................................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .....................................................7, 8

*Charvat v. Dispatch Consumer Services*,
769 N.E.2d 829 (2002)..................................................................... 16 n.4

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
Civil Action No. 11-2658 (JBS/KMW),
2014 U.S. Dist. LEXIS 134040 (D.N.J. Sept. 24, 2014) ........................................14

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
885 F.3d 154 (3d Cir. 2018)................................................................11

*Cubbage v. Talbots, Inc.*, Case No. C09-911BHS,
2010 U.S. Dist. LEXIS 68076 (W.D. Wash. July 7, 2010) ............................... 14 n.2

*Elkins v. Medco Health Solutions, Inc.*,
Case No. 4:12CV2141 TIA,
2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) ................... 14 n.2, 16 n.4

*Gleason v. Norwest Mortgage, Inc.*,
243 F.3d 130 (3d Cir. 2001)................................................................7

BE:12245543.1/USD008-280291

*Grodberg v. Hendricks Automotive Group*,
Case No. 07-6091-CV-W-SOW,
2009 U.S. Dist. LEXIS 151771 (W.D. Mo. Sept. 30, 2009) ...................... 14-15 n.2

*Hamilton v. Spurling*, Case No. 3:11cv00102,
2013 U.S. Dist. LEXIS 38585 (S.D. Ohio Mar. 20, 2013) .............................. 16 n.4

*Holcombe v. DirecTV, LLC*,
215 F. Supp. 3d 1346 (N.D. Ga. 2016) ....................................................... 15-16 n.3

*Hovila v. Tween Brands, Inc.*, Case No. C09-0491RSL,
2010 U.S. Dist. LEXIS 34861 (W.D. Wash. Apr. 7, 2010) ............................. 14 n.2

*Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006) ........................................7

*Mais v. Gulf Coast Collection Bureau, Inc.*,
768 F.3d 1110 (11th Cir. 2014) ...............................................................................11

*Martin v. Comcast Corp.*, No. 12 C 6421,
2013 U.S. Dist. LEXIS 169221 (N.D. Ill. Nov. 26, 2013) .............................. 13-14

*Ott v. Mortgage Investors Corp. of Ohio*,
65 F. Supp. 3d 1046 (D. Or. 2014) ........................................................................13

*Physicians Healthsource, Inc. v. Cephalon, Inc.*,
340 F. Supp. 3d 445 (E.D. Pa. 2018) .....................................................................11

*Podobnik v. United States Postal Service*,
409 F. 3d 584 (3d Cir. 2005) ....................................................................................7

*Rando v. Edible Arrangements International, LLC*,
Civil Action No. 17-701(JBS/AMD),
2018 U.S. Dist. LEXIS 51201 (D.N.J. Mar. 28, 2018) ..........................................15

*Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10 C 7995,
2013 U.S. Dist. LEXIS 125090 (N.D. Ill. Sept. 3, 2013) .......................................11

*Shupe v. JPMorgan Chase Bank of Ariz.*,
No. CV 11-00501-TUC-RCC (BPV),
2012 U.S. Dist. LEXIS 54756 (D. Ariz. Mar. 14, 2012) ........................................14

iv

*Thomas-Lawson v. Koons Ford of Baltimore, Inc.*,
Civil Case No. SAG-19-3031,
2020 U.S. Dist. LEXIS 59517 (D. Md. Apr. 6, 2020) .................................. 9, 16 n.4

*Van Patten v. Vertical Fitness Group, LLC*,
847 F.3d 1037 (9th Cir. 2017) .................................................................15

*Viggiano v. Kohl's Department Stores, Inc.*,
Civ. Action No. 17-0243-BRM-TJB,
2017 U.S. Dist. LEXIS 193999 (D.N.J. Nov. 27, 2017) ........................................ 15

*Zelma v. Conway*, Civil Action No. 2:12-cv-00256 (DMC) (JBC),
2013 U.S. Dist. LEXIS 175668 (D.N.J. Dec. 11, 2013) .................................. 14 n.2

## Statutes

47 U.S.C. § 227(c) ...................................................................... 8-9

## Federal Regulations

47 C.F.R. § 64.1200(f)(5) ................................................................ 8-9

## FCC Rulings

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144 (2003) ("2003 FCC Order") .................. 9, 10, 10 n.1, 14 n.2

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 3788 (2005) ("2005 FCC Order") ................................ 10, 12

## Court Rules

D.N.J. Civ. R. 56.1 ...................................................................... 4

v

Defendant US Dealer Services, Inc. ("USDS"), by its counsel, submits this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, USDS respectfully requests that the Court enter judgment in its favor and against Plaintiff Nathan Rowan ("Mr. Rowan" or "Plaintiff").

## I.    __INTRODUCTION__

In July 2020, Plaintiff bought a vehicle services policy from non-party Palmer Administrative Services, Inc. ("Palmer), which he then canceled. USDS, an authorized seller of Palmer products, made several "win-back" calls to Plaintiff trying to win back his business for Palmer. USDS was successful, but only momentarily: Plaintiff bought a Palmer policy from USDS, then canceled it, and then sued USDS for the phone calls at issue here.

This case should be dismissed because Plaintiff's established business relationship ("EBR") with Palmer authorized USDS's calls to Plaintiff. Because of that EBR, Plaintiff's claim for a violation of the Telephone Consumer Protection Act's Do-Not-Call provisions fails as a matter of law because those calls were never "telephone solicitations" in the first place. The FCC created the EBR exception to its Do-Not-Call rules to allow businesses like USDS to make sales calls to their customers for certain prescribed time periods, even if their number is listed on the National Do-Not-Call Registry, provided that businesses honor

1

individual customer's requests *not* to receive telephone solicitations from or on behalf of that business going forward.  The EBR exception permits sellers and their authorized marketers to contact prior or existing consumers within 18 months of the last transaction with that consumer, so long as the consumer does not make a seller-specific do-not-call request, at which point the EBR expires (even if the underlying business relationship continues).   Thus, there are two pertinent relationships for purposes of the EBR analysis:

> (1)   **The nature and length of the underlying commercial relationship.**  If the potential customer only makes an *inquiry*, but does not consummate a transaction with the seller, the seller's right to make telephone-solicitation calls to that person expires 3 months after the consumer's inquiry.  If, however, the customer enters into an *underlying commercial transaction* with the seller, then those telephone solicitations can be made for up to 18 months after the conclusion of that underlying commercial relationship.

> (2)   **The separate and independent right to make a seller-specific do-not-call request.**  As noted above, the FCC's default rule is that sellers (and their marketers) can make telephone solicitations for up to 3 months to inquiry-only consumers, and up to 18 months after the conclusion of an underlying commercial relationship.  But the FCC gave consumers a separate, independent right to terminate *the EBR exception for telephone solicitations* without terminating the underlying business relationship.  Thus, at any point from the first day of entering into a transaction until the 18-months-after-the-business-relationship-ends date, consumers can make a seller-specific do-not-call request to the seller, and that request must be honored, irrespective of where the parties are in their underlying commercial relationship (which, of course, the FCC cannot and does not regulate).

The underlying commercial relationship, and the window of time in which sellers can make solicitation calls, are two separate, independent time periods.

Even while the relationship is ongoing, the consumer can continue to receive the goods or services bought, and elect to not receive the seller-specific phone calls by making a seller-specific do-not-call request.  It's perfectly legal to tell your bank that you want to keep the checking account open, but not get any more calls about the bank's credit cards, savings accounts, etc.  Or you can tell the bank/seller that *after* you close the checking account but before the 18-month EBR window expires.  Either way, the bank needs to honor that request.  That is the consumer's choice, but the FCC's default rule is that, unless and until a consumer makes a seller-specific Do-Not-Call request, which terminates the seller's EBR with that consumer, the seller's goods and services can be marketed to that consumer for up to 18 months after the conclusion of the underlying commercial relationship.

The only relationship that matters here is the relationship regarding the right of sellers to make telephone calls to numbers on the national Do-Not-Call Registry—the FCC regulates telephone calls, not what constitutes the termination of a commercial or transactional relationship.  These two relationships are entirely independent, with the one caveat being that the ending of the commercial relationship starts the clock on the three-month (in the case of an inquiry) or 18-month (in the case of a transaction) closing window on a valid EBR exception to the FCC's telephone-solicitation rule.   Plaintiff's confusion of these two relationships, which conflates the termination of the commercial relationship with

3

the termination of the EBR, runs contrary to the entire purpose of the EBR. If there was any confusion surrounding these two separate relationships, the FCC's binding rulings regarding the EBR exception clarify that these two relationships are separate and distinct.

Plaintiff is ultimately and incorrectly attempting to obfuscate what is a simple two-step inquiry that determines whether an EBR existed: (1) was there a transaction between the consumer and the seller within the prior 18 months, regardless of the current status of that commercial relationship? If so, an EBR exists unless (2) the consumer made a seller-specific do-not-call request before the call(s) at issue. An EBR was undoubtedly in place when USDS made the phone calls at issue in this case.

## II.   **RELEVANT UNDISPUTED MATERIAL FACTS**

Central to this Court's determination that the calls at issue are exempted from Plaintiff's TCPA claims because of an existing EBR are the following facts adduced during limited discovery conducted pursuant to the Court's August 16, 2021 Order, ECF No. 17, also set forth in the concurrently-filed Statement of Undisputed Material Facts ("SOF") prepared as required by Local Civil Rule 56.1, with citations to the record verified via sworn declarations of Ganna Freiberg and Mark Critchley, Esq.

1.     On July 16, 2020, Plaintiff Nathan Rowan ("Mr. Rowan" or "Plaintiff") purchased a vehicle service agreement, #PELDA414035 ("Policy 1"), from Interstate Auto Protection and administered by Palmer Administrative Services, Inc. ("Palmer").  SOF ¶ 1.

2.     On August 21, 2020, Plaintiff sent a letter to Palmer cancelling Policy 1 ("Policy 1 Cancellation Letter"), stating that his "reason for cancelling is that I purchased a new vehicle and no longer need the coverage."  SOF ¶ 2.

3.     The Policy 1 Cancellation Letter did not contain a do-not call request. SOF ¶ 3.

4.     USDS markets and sells vehicle service contracts administered by Palmer, which authorizes USDS to market and sell the vehicle service contracts it administers.  SOF ¶ 4.

5.     In January of 2021, within six months of the Policy 1 cancellation, USDS made the following five telephone calls to Plaintiff, for which he seeks damages in this matter:

      a.  January 12, 2021, 7:06 pm

      b.  January 15, 2021, 2:49 pm

      c.  January 19, 2021, 12:16 pm

      d.  January 20, 2021, 2:48 pm

      e.  January 21, 2021, 6:18 pm.

5

SOF ¶ 5.

6.      USDS made these five phone calls to Plaintiff (known in the industry as "win-back calls") to market alternative Palmer products to Plaintiff because of Plaintiff's status as a recent Palmer customer.  SOF ¶ 6.

7.      On January 21, 2021, Plaintiff answered a phone call that USDS initiated and purchased a second Palmer vehicle service contract from USDS ("Policy 2").  SOF ¶ 7.

8.      Plaintiff cancelled Policy 2 by letter on February 2, 2021 (the "Policy 2 Cancellation Letter").  Freiberg Decl. Ex. 4 [Policy 2 Cancellation Letter].  In the signature block of the Policy 2 Cancellation letter, Plaintiff listed his telephone number as "651-983-5605 – please do not call. Provided for your reference only." SOF ¶ 8.

9.      This represents the only do-not-call Plaintiff made in this matter— Plaintiff made no do-not-call request in any previous communications with Palmer or USDS.  SOF ¶ 9.

10.     Plaintiff does not allege that he received phone calls from USDS after the Policy 2 Cancellation letter dated February 2, 2021.  SOF ¶ 10.

## III.    LEGAL STANDARD

Summary judgment should be granted where no genuine issue of material fact exists for resolution at trial and the moving party is entitled to judgment as a

matter of law.   Fed. R. Civ. P. 56(a).   Summary judgment "is no longer a disfavored procedural shortcut, and may present the district court with the first opportunity to dispose of meritless cases under the federal practice of notice pleading." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.   The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.   *Celotex*, 477 U.S. at 330.   "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."   *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." (quoting *Celotex*, 477 U.S. at 325)).   Further, the nonmoving party is required to "point to concrete evidence in the record which supports each

essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322.

## IV.  ARGUMENT

### A.   Binding FCC Rulings Dictate that Plaintiff's TCPA Claims Fail as a Matter of Law.

The parties' dispute centers on whether Plaintiff's cancellation of Policy 1 affected the EBR that permitted USDS to make calls to Plaintiff to sell him another Palmer product—the FCC's rulings on the issue show that it did not.  The term "established business relationship" for purposes of "telephone solicitations" is defined as:

a prior or existing relationship formed by a voluntary two-way communication . . . on the basis of the subscriber's purchase or transaction *with the entity within the eighteen (18) months immediately preceding the date of the telephone call* or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5) (emphasis added).  Notably, calls made pursuant to an EBR are excluded from the FCC's definition of "telephone solicitation," and therefore such calls do not present actionable claims under the TCPA's do-not-call

8

provision in 47 U.S.C. § 227(c), which form the entire basis of Plaintiff's Complaint. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144, 44148 ¶ 20 (2003) ("2003 FCC Order"); *Thomas-Lawson v. Koons Ford of Balt., Inc*., Civil Case No. SAG-19-3031, 2020 U.S. Dist. LEXIS 59517, at *12-13 (D. Md. Apr. 6, 2020) (dismissing TCPA claims for failure to plead calls were actionable "telephone solicitations" due to existing EBR).

The FCC's rulings regarding this exemption, along with relevant caselaw, establish that the EBR that allowed USDS to make the calls to Plaintiff here remained intact until Plaintiff made his do-not-call request on February 2, 2021, after all the calls at issue here occurred. As discussed above, this is because there are two different relationships at issue: the EBR that allows the seller (or its authorized sellers, like USDS) to keep making telephone solicitations, and the substantive commercial relationship, which can be terminated while the EBR remains in place. Here, Plaintiff terminated the latter, but not the former.

The FCC addressed this exact scenario in its 2003 FCC Order. Specifically, the 2003 FCC Order effected a revision in the FCC's Do-Not-Call-related regulations, and in that Order the FCC clarified that terminating an EBR is separate and distinct from cancelling a contract or terminating a business transaction: "In the context of telemarketing calls, a consumer's '*prior* or existing relationship'

9

*continues for eighteen (18) months . . . or until the customer asks to be placed on that company's do-not-call-list*."   2003 FCC Order at 44158 ¶ 81 (emphasis added).[1]  The FCC further cemented this position two years later, when it issued its Second Order on Reconsideration of the TCPA in 2005, ruling that "[o]nce any account is closed *or any 'contract' has terminated*, *the bank, lender, or other entity will have an additional 18 months from the last transaction to contact the consumer before the EBR is terminated for purposes of telemarketing calls*."  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 3788, 3797 ¶ 26 (2005) ("2005 FCC Order") (emphasis added).  Thus, for nearly two decades, the FCC has clearly established the two-relationship regime vis-à-vis its telephone-solicitation rules: the EBR relationship that gives sellers the right to make additional telephone solicitations to those consumers, notwithstanding their number being on the national Do-Not-Call Registry, and the separate, underlying commercial relationship, the terms—and termination—of which the FCC does not regulate.

---

[1]     The FCC also stated in its 2003 Order that the status as a current customer is irrelevant to discussion regarding status of an EBR: "Companies will be permitted to call consumers with whom they have an established business relationship for a period of 18 months from the last payment or transaction, even when those consumers are registered on the national do-not-call list, as long as a consumer has not asked to be placed on the company's do-not-call list.  Once the consumer asks to be placed on the company-specific do-not-call list, the company may not call the consumer again regardless of whether the consumer continues to do business with the company."  *Id.* at 44160 ¶ 92.

10

Imperatively, this Court has recognized that "the Hobbs Act, 28 U.S.C. § 2342(1), requires the [District] Court to apply a final order of the FCC, to the extent such order squarely addresses the disputed issue." *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, Civil Action No. 11-2658 (JBS/KMW), 2014 U.S. Dist. LEXIS 134040, at *18 (D.N.J. Sept. 24, 2014), *aff'd on other grounds*, 885 F.3d 154, 163 (3d Cir. 2018); *see also Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014) (finding that the Hobbs Act does not permit district courts to review an order of the FCC); *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010) (ruling that under the Hobbs Act, district courts cannot "ignore" or invalidate the FCC's orders and regulations); *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 340 F. Supp. 3d 445, 449 (E.D. Pa. 2018) (affirming that district courts lack jurisdiction to question the validity of FCC orders without a decision from the court of appeals); *Savanna Grp., Inc. v. Trynex, Inc.*, Case No. 10 C 7995, 2013 U.S. Dist. LEXIS 125090, at *15 (N.D. Ill. Sept. 3, 2013) ("Under the Hobbs Act, the [District] Court must apply a final FCC order if it governs the matter at issue."). This Court is therefore bound by these FCC Orders, which remain in force and specifically address this issue.

Cancelling a contract, as Plaintiff did in this case, does not terminate the FCC-authorized EBR; it merely ends the underlying commercial relationship, and starts the 18-month window in which the seller or telemarketer selling that seller's

11

goods or services may contact the consumer to "win back" the consumer's business.  To further emphasize the separation between terminating an established business relationship and terminating a commercial or transactional relationship (e.g., a contract, like in this case), the FCC provides: "We emphasize that *a consumer may terminate the EBR for purposes of telemarketing calls at any time by making a do-not-call request*.  Once the consumer makes a company-specific do-not-call request, the company may not call the consumer again to make a telephone solicitation *regardless of whether the consumer continues to do business with the company*."  2005 FCC Order at 3797 ¶ 26 (emphasis added).

Simply put, an EBR is not the same *relationship* as an underlying commercial or transactional relationship; the FCC's Orders confirm that when a transaction or a contract is "terminated," the EBR remains intact until either the consumer makes a do-not-call-request or 18 months pass.  Again, though, the Commission gave consumers total control over the EBR—all they have to do is make a do-not-call request to whatever seller they no longer want to receive sales calls from.  Plaintiff conspicuously did not exercise that right when he cancelled Policy 1; presumably he knew he had that option, because he later affirmatively made a do-not call request when cancelling Policy 2, a request USDS honored.  USDS's calls here are precisely the type the FCC created the EBR exemption to protect.  Rowan's cancellation of Policy 1 represents the last transaction that began

12

the 18-month window before the EBR expired (absent an earlier do-not-call request). All the calls at issue were made subject to the EBR exemption: within the established 18 month period, and prior to Plaintiff's do-not-call request.

**B.      Relevant Precedent as Applied to the Undisputed Facts at Issue Further Show that Plaintiff's TCPA Claims Fail as a Matter of Law.**

Related case law supports the FCC's rulings regarding what constitutes termination of an EBR, and more importantly, contradicts Plaintiff's misguided position that cancelling a contract qualifies as *also* simultaneously terminating the EBR, a reading that renders the FCC's various controlling orders nullities. Indeed, courts treat termination of a contractual relationship between parties as a completely independent inquiry from whether an EBR was terminated through a do-not-call request. *See Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1065-66 (D. Or. 2014) (specifying in an examination of class definitions that the EBR may be terminated for consumers that had made company-specific do-not-call-requests but making no such specification for consumers only listed on the national do-not-call registry, regardless of status as current customers); *see also Martin v. Comcast Corp.*, No. 12 C 6421, 2013 U.S. Dist. LEXIS 169221, at *15 (N.D. Ill. Nov. 26, 2013) (focusing solely on the timing of the do-not-call request while examining termination of an established business relationship when customer concurrently cancelled services *and* made a company-specific do-not-call

13

request); *Shupe v. JPMorgan Chase Bank of Ariz.*, No. CV 11-00501-TUC-RCC (BPV), 2012 U.S. Dist. LEXIS 54756, at *14-15 (D. Ariz. Mar. 14, 2012) (finding that for the purposes of the TCPA, "termination" of an EBR is not necessarily related to termination of all contractual relationships between the parties); *see also CE Design Ltd. v. Prism Bus. Media, Inc.*, No. 07 C 5838, 2009 U.S. Dist. LEXIS 70712, at *13 (N.D. Ill. Aug. 12, 2009) ("[A]n EBR may be terminated by the recipient's request to terminate future communications.") (citation omitted).  And courts applying the EBR exception have generally found that the chief inquiry, even absent a company-specific do-not-call request, is the existence of a purchase or transaction, regardless of any continuing status of that commercial relationship.[2]

---

[2]   *See, e.g.*, *Elkins v. Medco Health Sols., Inc*., Case No. 4:12CV2141 TIA, 2014 U.S. Dist. LEXIS 57633, at *22-23 (E.D. Mo. Apr. 25, 2014) (affirming that an EBR existed where plaintiff used defendant's prescription benefit management services to fill prescriptions at defendant's pharmacies); *Zelma v. Conway*, Civil Action No. 2:12-cv-00256 (DMC) (JBC), 2013 U.S. Dist. LEXIS 175668, at *6 (D.N.J. Dec. 11, 2013) ("Plaintiff[']s election to receive a free Prevention Magazine subscription through the SkyMiles program is a sufficient 'transaction' to trigger the [EBR] exception [with Prevention Magazine]."); *Cubbage v. Talbots, Inc.*, Case No. C09-911BHS, 2010 U.S. Dist. LEXIS 68076, at *8 (W.D. Wash. July 7, 2010) ("In this case, [Plaintiff's wife] purchased at least one product at a Talbots store within the eighteen months prior to April of 2009, the date of the call. Therefore, [Plaintiff's wife] and Talbots had an established business relationship."); *Hovila v. Tween Brands, Inc.*, Case No. C09-0491RSL, 2010 U.S. Dist. LEXIS 34861, at *14 (W.D. Wash. Apr. 7, 2010) (ruling that calls made after plaintiff purchased merchandise at defendant's stores fell within EBR exception); *Grodberg v. Hendricks Auto. Grp.*, Case No. 07-6091-CV-W-SOW, 2009 U.S. Dist. LEXIS 151771, at *14 (W.D. Mo. Sept. 30, 2009) (quoting 2003 FCC Order at 44158 ¶ 81) (affirming that an established business relationship with a consumer

14

Furthermore, in a related TCPA context, cancelling a contract is not considered revocation of consent to be contacted. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (affirming summary judgment in favor of TCPA defendant because plaintiff did not revoke consent to be contacted despite cancelling his contract with defendant); *see also Rando v. Edible Arrangements Int'l, LLC*, Civil Action No. 17-701(JBS/AMD), 2018 U.S. Dist. LEXIS 51201, at *20-21 (D.N.J. Mar. 28, 2018) (dismissing TCPA plaintiff's complaint for failure to plausibly show revocation of consent to receive text messages after numerous voluntary interactions with Defendant's text message communication system); *Viggiano v. Kohl's Dep't Stores, Inc.*, Civ. Action No. 17-0243-BRM-TJB, 2017 U.S. Dist. LEXIS 193999, at *14 (D.N.J. Nov. 27, 2017) (dismissing Plaintiff's TCPA complaint with prejudice for failure to show she revoked her consent to be called).[3]

---

lasts from 18 months after the most recent transaction with the consumer "even if the company does not currently provide service to that customer").

[3]    Contrary to the more reasoned authority on this issue, there are some courts that uncritically conflate the termination of the underlying commercial relationship with the EBR, which Plaintiff may attempt to rely on.  Those courts do not appear to have been briefed properly on the applicable law, and/or their statements were dicta. *See, e.g., Holcombe v. DirecTV, LLC*, 215 F. Supp. 3d 1346 (N.D. Ga. 2016).  *Holcombe* focuses exclusively on the interpretation of a Georgia state statute, and whether or not calls at issue were considered telephone solicitations under the relevant state statute, which prohibited calls made with the exception of when a "prior business relationship" existed. *Id.* at 1349-51.  While the *Holcombe* court hypothesized on what effect cancelling plaintiff's DirecTV subscription might have on potential TCPA claims, there were no TCPA claims at issue, and the

15

Again, examining the undisputed facts at issue in this matter shows that the subject calls were made pursuant to an EBR: (1) All of the calls here, made in January 2021, were well within 18 months of the most recent transaction (Rowan's cancellation of Policy 1 in August of 2020), and (2) made prior to Plaintiff's only do-not-call request in the Policy 2 Cancellation Letter on February 2, 2021. *See* SOF ¶¶ 5, 8-10.[4]

As set forth above, Plaintiff's individual and class claims lack merit under long-standing law from the Federal Communications Commission and courts around the country. Because Plaintiff had not terminated the existing EBR by making a do-not-call request before he received the calls at issue, those calls do not qualify as "telephone solicitations" that are actionable under the TCPA.

---

court ultimately found that the calls did not violate the relevant statute despite the plaintiff having cancelled the contract, and issued no findings related to the TCPA. *Id.* at 1350-51. This non-binding authority is inapposite.

[4]   *See Elkins*, 2014 U.S. Dist. LEXIS 57633, at *23 (granting summary judgment because it was "uncontroverted that Plaintiff had an established business relationship with [Defendant] as evidenced by Plaintiff utilizing [Defendant's services within the previous 18 months]."); *Hamilton v. Spurling*, Case No. 3:11cv00102, 2013 U.S. Dist. LEXIS 38585, at *34 n.12 (S.D. Ohio Mar. 20, 2013) ("[A]s the FCC report points out, **it is not until a person who has an EBR with a telemarketer requests to be placed on a DNC list that a company must comply with the dictates of Section 64.1200**." (quoting *Charvat v. Dispatch Consumer Servs.*, 769 N.E.2d 829, 834 (2002)) (emphasis added); *see also Thomas-Lawson v. Koons Ford of Balt., Inc.*, Civil Case No. SAG-19-3031, 2020 U.S. Dist. LEXIS 59517, at *13-14 (D. Md. Apr. 6, 2020) (dismissing a TCPA plaintiff's claims because the allegedly illegal text message in question showed that there was an EBR because it was "addressed to Plaintiff by her first name, acknowledge[d] records of their past vehicle maintenance transactions, and reflect[ed] that the most recent transaction occurred only five months ago.").

16

## V.   <u>CONCLUSION</u>

For the foregoing reasons, USDS respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in favor of USDS and against Plaintiff.


Dated: December 10, 2021                    **BRACH EICHLER LLC**

*Attorneys for Defendant US Dealer Services, Inc.*

By:   <u>*/s/ Mark E. Critchley*</u>
      Mark E. Critchley, Esq.
      Bob Kasolas, Esq.

17

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 10, 2021 a true and correct copy of the foregoing Memorandum of Law in Support of Defendant's Motion for Summary Judgment has been served via the Court's ECF system on all counsel of record.

<u>*/s/ Mark E. Critchley*</u>
Mark E. Critchley, Esq.
