UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NATHAN ROWAN, individually and on behalf of all others similarly situated,**<br><br>PLAINTIFF,<br><br>v.<br><br>**US DEALER SERVICES, INC.,**<br><br>DEFENDANT | Civ. No. 21-09945 (KM)(LDW)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Nathan Rowan brings the instant action against Defendant US Dealer Services, Inc. ("USDS") alleging that Defendant called his telephone number that was registered on the national Do Not Call ("DNC") registry, in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and its implementing regulations.[1]

---

[1] Citations to certain items in the record will be abbreviated as follows:

"DE" = Docket entry number in this case.

Compl. = Plaintiff's Complaint (DE 1)

Def. MSJ = Defendant's Memorandum of Law in Support of Motion for Summary Judgment (29-2)

Def. SOMF = Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (DE 29-1)

Pl. Opp. = Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (DE 31)

Def. Reply = Defendant's Reply in Support of Motion for Summary Judgment (DE 34)

1

Now before the Court is USDS's motion for summary judgment (DE 29). For the following reasons, USDS's motion for summary judgment will be **GRANTED**.

## I. BACKGROUND

### A. Facts

The following facts are set forth in USDS's motion for summary judgment, which Rowan does not dispute.

On July 16, 2020, Rowan purchased a vehicle service agreement, #PELDA414035 ("Policy 1"), from Interstate Auto Protection and administered by Palmer Administrative Services, Inc. ("Palmer"). (Def. SOMF ¶ 1.) However, on August 21, 2020, Rowan sent a letter to Palmer cancelling Policy 1 ("Policy 1 Cancellation Letter") and explaining that the cancellation was due to "purchas[ing] a new vehicle and no longer need[ing] the coverage." (*Id.* ¶ 2.) The parties do not dispute that the Policy 1 Cancellation Letter "did not contain a do-not call request." (*Id.* ¶ 3.)

USDS is authorized to market and sell vehicle service contracts administered by Palmer. (*Id.* ¶ 4.) In January 2021, about five months after Rowan cancelled Policy 1, USDS made the five telephone calls to Rowan giving rise to this action. (Def. SOMF ¶ 5.) Those calls occurred on:

- January 12, 2021, 7:06 PM
- January 15, 2021, 2:49 PM
- January 19, 2021, 12:16 PM
- January 20, 2021, 2:48 PM
- January 21, 2021, 6:18 PM

USDS claims that it called Rowan to market alternative Palmer products given his status "as a recent Palmer customer" (*i.e.*, "win-back calls"). (*Id.* ¶ 6.) Indeed, during the January 21, 2021 phone call, Rowan did purchase a second Palmer vehicle service agreement, #LOTDD435284, from USDS ("Policy 2"). (*Id.* ¶ 7.)

Rowan cancelled Policy 2 by letter on February 2, 2021 (the "Policy 2 Cancellation Letter"). In the Policy 2 Cancellation Letter, Rowan both formally canceled Policy 2 and made an explicit do-not-call request, providing his phone number for reference in the letter. (*Id.* ¶ 8.) The parties agree that the Policy 2 Cancellation Letter was the only explicit do-not-call request Rowan made to either Palmer or USDS. (*Id.* ¶ 9.) Since cancelling Policy 2, Rowan has not received a phone call from USDS. (*Id.* ¶ 10.)

### B. Procedural History

Rowan filed his complaint against USDS on April 21, 2021. (DE 1.) Rowan seeks to represent the following class:

> All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the same purpose Defendant called Plaintiff.

(*Id.* ¶46.) The Complaint brings a claim against USDS for the violation of the TCPA, 47 U.S.C. § 227, on behalf of the nationwide class. (*Id.* ¶¶ 52-58.) On June 25, 2021, USDS filed its answer. (DE 10.) The parties then conducted fact discovery.

After conducting limited discovery, on October 22, 2021, USDS requested leave to file the pending motion summary judgment and to stay discovery (DE 24), which Rowan opposed on November 5, 2021 (DE 25). On November 9, 2021, Magistrate Judge Leda D. Wettre granted USDS's request to file a motion for summary judgment. (DE 26.) USDS then filed this motion for summary judgment (DE 29), which Rowan opposes (DE 31).

## II.   LEGAL STANDARD — MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court deciding a motion for summary judgment must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex*, 477 U.S. at 322-23. "[W]ith respect to an issue on which the nonmoving party bears the burden of proof … the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met this threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of

material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A fact is "material" for purposes of a summary judgment motion only if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.  DISCUSSION

### A. Statutory and Regulatory Background

In 1991, Congress enacted the TCPA to deter abusive telemarketing practices that compromised consumer privacy. TCPA, Pub. L. No. 102-243, § 2(6), 105 Stat. 2394, 2394 (finding that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers."). The TCPA prohibits invasive telemarketing practices and empowers the Federal Communications Commission ("FCC") to prescribe implementing regulations. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373-74 (2012). In 2003, the FCC issued a final rule creating the DNC registry with the Federal Trade Commission ("FTC").[2] *See* Rules and Regulations and Implementing the Telephone Consumer Protection Act (TCPA) of 1992, 68 Fed. Reg. 44144-01 (July 25, 2003) (codified at 47 C.F.R. § 64.1200(c)-(e)) (the "2003

---

[2]   Prior to the promulgation of the 2003 Final Rule, the FTC had already created its own national DNC registry, pursuant to its authority under the Telemarketing and Consumer Fraud and Abuse Prevention Act of 1994, 15 U.S.C. §§ 6101, *et seq.* 16 C.F.R. § 310.4(b)(1)(iii)(B); see 15 U.S.C. § 6102(a)(1). Congress tasked the FCC with coordinating its TCPA rulemaking with the FTC in order "to maximize consistency" with the DNC rules already promulgated by the FTC. 15 U.S.C. § 6153.

Final Rule"). Once an individual registers a residential or wireless telephone number on the DNC registry, TCPA regulations limit the number of telephone solicitations that can be made to that number. *Id.* at 44146-47; *see also* 47 C.F.R. §§ 64.1200(c)-(e).

Under the TCPA, an individual who receives a telephone solicitation in violation of the TCPA's regulations has a private right of action if that individual has "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [the TCPA]." 47 U.S.C. § 227(c)(5). There are, however, limited exemptions to liability under the DNC regulations. One such exemption, at issue here, applies where there is an "established business relationship" ("EBR") between the caller and subscriber. 47 C.F.R. § 64.1200(f)(15). An EBR is defined as

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

*Id.* § 64.1200(f)(5). However, a subscriber may terminate an EBR by specifically requesting "not to receive telemarketing calls made by or on behalf of that person or entity … even if the subscriber continues to do business with the seller." *Id.* §§ 64.1300(d)(3), (f)(5)(i). The FCC has also stated "that companies often hire third party telemarketers to market their services and products. In general, those telemarketers may rely on the seller's EBR to call an individual to market the seller's services and products." In Re Rule & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14083 (2003). The seller or telemarketer has the burden of proving the existence of an EBR. *See* 2003 FCC Final Rule at 44158.

**B. Analysis**

Rowan alleges that after cancelling Policy 1, USDS called him five times in January 2021 despite his telephone number being listed on the DNC registry. (DE 1 at ¶¶ 20, 22-38; *see also* Def. SOMF ¶¶ 6-7.) Rowan asserts that these calls violated 47 C.F.R. § 64.1200(c) because (1) his telephone number was listed on the DNC registry and (2) he "received more than one telephone call" from USDS within a 12-month period. (DE 1 at ¶¶ 18, 53-54.) Moreover, Rowan argues that USDS's phone calls do not fall under the EBR exemption because the EBR between the parties was terminated by Rowan's cancellation of Policy 1 on August 21, 2020. (Pl. Opp. at 1, 3.)

On the other hand, USDS argues that the January 2021 "win-back" calls were not "telephone solicitations" and did not violate the TCPA because (1) the parties had an existing EBR, by virtue of Rowan's having purchased Policy 1 on July 16, 2020, (2) the calls were made within eighteen months after Rowan cancelled Policy 1, and (3) Rowan provided USDS with a do-not-call request only *after* the win-back calls, on February 2, 2021. (Def. MSJ at 8-9; Def. Reply at 4-5.) According to Rowan, the Policy 1 Cancellation Letter did not extinguish the EBR between the parties because an "underlying commercial relationship" is distinct from an EBR; although Rowan cancelled Policy 1, TCPA regulations permitted USDS to call Rowan for another eighteen months or until he requested to be placed on USDS's DNC list (which Rowan only did *after* the at-issue win-back calls, in connection with the cancellation of Policy 2). (Def. MSJ at 9, 12; Def. Reply at 4.)

The parties do not dispute that Rowan's purchase of Policy 1 created an EBR between the parties. Therefore, the crux of this dispute is whether the Policy 1 Cancellation Letter also terminated the parties' EBR. If so, Rowan contends that USDS's win-back calls *would not* be exempted from TCPA liability under the EBR exemption.

As previously established, 47 U.S.C. § 227(a)(4) provides that a telephone call does not constitute a "telephone solicitation" if made "to any person with whom the caller has an [EBR]." An EBR is defined as either:

7

> [A] *prior* or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call …, *which relationship has not been previously terminated by either party.*

47 C.F.R. § 64.1200(f)(5) (emphasis added). With respect to the definition of EBR, Rowan argues that the phrase "which relationship has not been previously terminated by either party" implies that the EBR can be cancelled through the termination of the underlying commercial relationship between the parties—and not only through a specific do-not-call request to the company. (Plf. Opp. at 2-3.) The Court disagrees and holds that, absent the consumer providing the seller with a do-not-call request, or the functional equivalent of such a request, the termination of an underlying commercial relationship is not sufficient to terminate an EBR and cut off the otherwise-applicable eighteen-month deadline for calls.

      The FCC's 2003 Final Rule and Orders interpreting the definition of EBR support such an interpretation. The 2003 Final Rule states that the amended EBR definition "permits the relationship, once begun, to exist for eighteen (18) months in the case of purchases or transactions …, unless the consumer or the company 'terminates' it." 2003 Final Rule at 44158. The word "termination," however, is only used with reference to *the EBR*, not the underlying commercial relationship creating the EBR. *See* 2003 Final Rule at 44158 ("We emphasize here that the termination of an [EBR] is significant only in the context of solicitation calls. We also note that the act of 'terminating' an [EBR] will not hinder or thwart a creditors' attempts to reach debtors by telephone[.]") Consistent with this reading, the 2003 Final Rule provides that "a company's *prior relationship* with a consumer entitles the company to call that consumer" (1) eighteen months "from the date of the last payment or financial transaction, even if the company *does not currently provide* service to that customer" or (2) until the "customer asks to be placed on that company's [DNC]

8

list." *Id.* (emphasis added). "Relationship," as used throughout these passages, clearly refers to the EBR. It also makes sense; if the termination of the commercial relationship also terminated the EBR, permitting a company to contact their former customer would render the EBR exemption superfluous.

Further, an FCC Order issued in 2005 and clarifying the TCPA, provides additional support to the Court's finding. The Order provides that while "a financial contract" is valid an EBR exists between the contracting parties which permits "that company to call the consumer during the period of the 'contract.'" In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 20 FCC Rcd. 3788, 3798 (2005) ("2005 Order"). The 2005 Order also states that "[o]nce any account is *closed* or any 'contract' has *terminated*," that company has "an additional 18 months from the last transaction to contact the consumer before the EBR is terminated for purposes of telemarketing calls." *Id* (emphasis added). Nevertheless, the FCC emphasized "that a consumer may terminate the EBR for purposes of telemarketing calls at any time by making a do-not-call request." *Id.*

The FCC's 2003 Final Rule and 2005 Final Order make two principles patently clear: (1) a company may call a customer for eighteen months after the termination of the commercial relationship; and (2) a customer may extinguish the EBR at any time by sending the company a do-not-call request. The Court therefore applies these principles to the undisputed facts in this action. *See City Select Auto Sales, Inc. v. David Randall Assocs., Inc.,* No. CIV.A. 11-2658 JBS, 2014 WL 4755487, at *6 (D.N.J. Sept. 24, 2014) (stating "that the Hobbs Act, 28 U.S.C. § 2342(1), requires the Court to apply a *final order* of the FCC, to the extent such order squarely addresses the disputed issue.")

Here, Rowan cancelled Policy 1 on August 21, 2020. (Def. SOMF at ¶ 2.) The Policy 1 Cancellation Letter, however, did not explicitly request that USDS stop calling Rowan (Def. SOMF at ¶ 3); consequently, USDS was entitled to call Rowan for either (1) an additional eighteen months or (2) until Rowan provided USDS with a do-not-call request. Finally, all five of USDS's win-back telephone

9

calls to Rowan occurred (1) within 18 months after the Policy 1 Cancellation Letter, and (2) before Rowan sent USDS the Policy 2 Cancellation Letter, which included a do-not-call request. The Court therefore finds that, under a correct view of the law and on this undisputed factual record, no reasonable jury could find that USDS violated 47 C.F.R. § 64.1200(c).

Finally, I reject Rowan's assertion that the Court must deny USDS's motion for summary judgment because USDS failed to establish that it implemented "minimum telemarketing policies and procedures" pursuant to 47 C.F.R. § 64.1200(d). (Pl. Opp. at 6-7.) The Complaint, however, does not allege that USDS violated § 64.1200(d), the section from which that "policies and procedures" obligation allegedly arises; instead, it alleges that USDS violated § 64.1200(c) by making telephone solicitation calls to Rowan while his telephone number was on the DNC registry. (Compl. at ¶¶ 53, 55; Pl. Opp. at 6-8.) The entire case thus far has been litigated on that latter theory. The Court will not deny USDS summary judgment on a theory of liability raised for the first time in Rowan's opposition brief. *See Bell v. City of Philadelphia*, 275 Fed. App'x 157, 160 (3d Cir. 2008); *cf. Becker v. Pro Custom Solar LLC*, No. 219CV535FTM29NPM, 2020 WL 474647, at *7 (M.D. Fla. Jan. 29, 2020) ("§ 64.1200(d)(3) … establishes the minimum standards a telemarketer must meet, which includes maintaining an internal do-not-call list. Plaintiff, however, does not assert in … that Defendant violated § 64.1200(d). Instead, Plaintiff alleges that Defendant violated § 64.1200(c) by making business solicitation phone calls to Plaintiff while he was registered on the National Do Not Call Registry. ")

Accordingly, USDS's motion for summary judgment is granted and Rowan's TCPA claim is denied.

## IV. Conclusion

For the reasons set forth above, I will grant USDS's motion for summary judgment.

Dated: July 18, 2022

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**